UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICKY WAYNE THOMAS                    CIVIL ACTION NO. 10-cv-0375

VERSUS                                JUDGE HICKS

WARDEN, LOUISIANA STATE               MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Ricky Wayne Thomas ("Petitioner") of simple burglary of an inhabited dwelling. He was sentenced to life in prison as a fourth-felony offender. His conviction and sentence were affirmed on appeal. State v. Thomas, 948 So.2d 1151 (La. App. 2d Cir. 2007), writ denied, 965 So.2d 396 (La.). He also pursued a state post-conviction application. Petitioner now seeks federal habeas relief on several issues. For the reasons that follow, it is recommended that his petition be denied.

**Sufficiency of the Evidence**

Hugo and Angela Bellamy, originally from Trinidad, had been married for more than 30 years and had lived in Vivian Louisiana for about 14 years. Mrs. Bellamy was suffering from medical conditions that required travel to Boston for treatment, and the couple was raising their five-year-old grandson after both his parents died. Their difficulties were added to when their home was broken into about 9:30 a.m. one morning when they were on their way to religious services.

Mrs. Bellamy realized during the drive that she had forgotten her glasses, without which she could not read, so the couple returned to their home.  Another couple, friends from church, were with them. Mr. Bellamy got out of the car and went to get the glasses when he noticed a glare coming from a back room, which turned out to be sunlight streaming through an open window.  As Mr. Bellamy went to investigate, a man walked out of the room wearing Mr. Bellamy's hat, and his pockets were bulging as if they were full of contents.

Mr. Bellamy grabbed at the man with his right hand.  He had injured his dominant left hand in a chainsaw accident.  The man was able to get away from him.  Mr. Bellamy was joined by his friend from church, and they tried to corner the man, who said, "I'm on drugs and I could hurt one of you guys."  Mr. Bellamy's friend suggested they avoid a violent confrontation.  The man ran around the back of the house and, with the aid of the porch, jumped a six-foot fence and ran.  The Bellamys gave a description of the man to police, but the officers did not check for fingerprints.  The Bellamys discovered their jewelry box was open.  Among the missing items were gold rings, chains, a gold coin collection, silver dollars, and two watches owned by their deceased son.  None of the items were ever recovered.

The Bellamys were again going to religious services about a week later when they saw Petitioner walking on the street in Vivian.  He was wearing the same clothes he had on the day of the burglary.  Mr. Bellamy testified that he told his wife, "This is him," and he left her to watch the man while he summoned police.  Mr. Bellamy returned with Vivian police officer David Crye.

Mrs. Bellamy reported that the man had crossed a nearby railroad track.  Mr. Bellamy got in the patrol car with Officer Crye, and they began driving around in the area where the man had traveled.  Mr. Bellamy spotted Petitioner and told the officer, "That's him."  Officer Crye stopped, called Petitioner over, and asked him to place his hands on the car for a weapons pat down.  Mr. Bellamy opened the car door and repeated, "That is him."  Petitioner then began to resist the officer, broke away, and ran down the street.  Police later located Petitioner and arrested him.  Mr. and Mrs. Bellamy both testified a trial.  Each identified Petitioner as the man they saw in their house.

Petitioner was convicted of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2.  The only issue was whether Petitioner was the man the Bellamys encountered in their home.  In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on

federal habeas unless the decision was an objectively unreasonable application of the deferential <u>Jackson</u> standard.  <u>Parker v. Matthews</u>,132 S.Ct. 2148, 2152 (2012).

Petitioner challenged the sufficiency of the evidence on direct appeal.  He argued that the Bellamys' description of the intruder to police immediately after the crime lacked particularity and the police failed to dust for fingerprints.  The appellate court reviewed the evidence, recited the <u>Jackson</u> standard, and applied that standard to the facts.  The court noted that both victims identified Petitioner at trial as the intruder they saw during daylight hours, with Mr. Bellamy saying he came face to face with the intruder.  Mr. Bellamy was also quite confident about his identification, saying he would know the man anywhere and was "100% positive."  There was no internal inconsistency in any of the testimony, and there is no requirement police dust a crime scene for fingerprints.  The conviction was affirmed. <u>State v. Thomas</u>, 948 So.2d at 1153-55.

Petitioner makes the same arguments here that failed on direct appeal.  He challenges the Bellamys' initial description of the burglar as a stocky 200-pound black male in his twenties with a red shirt as insufficiently particular.  That may have provided some basis for a closing argument to the jury, but once the jury returned its verdict the evidence had to be reviewed in the light most favorable to the prosecution.  When so viewed, a rational juror could easily return a verdict of guilty, which is what happened.  The appellate court conscientiously reviewed that verdict under the <u>Jackson</u> standard, and it is impossible to say, based on the state court record, that the state court's decision was an unreasonable application of <u>Jackson</u>.  Habeas relief is not available on this claim.

**Ineffective Assistance of Counsel**

    **A.  Introduction**

Petitioner argues that his counsel was ineffective for (1) not developing an insanity defense, (2) not obtaining records of prior convictions used at the habitual offender adjudication, and (3) not objecting to the admission of other crimes evidence.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

    **B.  Insanity Defense**

Petitioner argued in his post-conviction application that counsel should have challenged competency to stand trial and raised an insanity defense based on Petitioner's history of mental illness coupled with a serious learning disability that had required he attend a school for mentally disabled children.  Petitioner added that he had a very limited attention span.  Tr. 356.  The State's response included an affidavit from defense counsel, who testified that his conversations with Petitioner and observations of him caused counsel to believe that Petitioner had the mental capacity to assist in his defense, understand the nature of the charges and consequences of conviction, make decisions about matters such as whether to take the stand, and participate in other strategic decisions.  Counsel said he saw "no reason or justification" for raising an insanity defense, and he did not recall Petitioner making any complaint that he suffered mental problems.  Tr. 391.

The trial court rejected the claim, based largely on counsel's affidavit. Tr. 397. The appellate court denied a writ with a brief order that the "claims made are conclusory and unsupported claims of ineffective assistance of counsel" so that the trial court did not err in denying relief. Tr. 444. The Supreme Court of Louisiana denied writs without comment. Tr. 499.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general one, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable." Id.

Petitioner offers no attack upon the state court's adjudication other than to suggest that if the state court had allowed him to subpoena his medical and other records for an evidentiary hearing he could have proved up the claim. Petitioner does not, however, point

to any material in the state court record or even articulate specific facts that would support his claim.  A <u>Strickland</u> petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court."  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388 (2011).  It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. <u>Pape v. Thaler</u>, 645 F.3d 281, 288 (5th Cir. 2011).  To prevail on this claim, Petitioner would have to establish a reasonable likelihood that his counsel could, if he had pursued the issue, established a lack of competency or insanity.  Each of those matters requires a very strong evidentiary record, but Petitioner has pointed to no facts to support the claim.  Petitioner has been convicted of at least seven other felonies in separate proceedings, but there is no indication that competency or insanity were raised with any degree of success in those prior proceedings.  The state court's adjudication of this issue was reasonable based on the record before it.

### C.  Records of Prior Guilty Pleas

Louisiana law allows the sentence for a recent conviction to be enhanced if the offender has committed prior felonies.  The State filed a multiple offender bill that charged Petitioner had seven prior felony convictions.  The fingerprints on the bills of information for some of them were inadequate for identification, but the State was able to present testimony that Petitioner, who was fingerprinted in the hearing, was the same person who pleaded guilty in the past to simple burglary, simple burglary of an inhabited dwelling, and two counts of simple robbery.  Tr. 246-54.  The judge imposed a mandatory life sentence.

Petitioner argues that defense counsel did not review the transcripts and records of the prior convictions and, had he done so, he could have easily proven that the exhibits used at the multiple offender hearing were not sufficient to sustain the adjudication. Tr. 362-64. The State offered certified copies of court minutes of the prior guilty pleas.  The minutes of each case reflect that the defendant was represented by counsel when he entered his guilty plea, and the court informed the defendant of his constitutional rights as per Boykin v. Alabama. The two simple robbery files also included full transcripts of the guilty pleas that reflected Boykin colloquies.  Tr. 52, 54, 55-64, and Tr. 65-76.

When Petitioner pressed this issue in his post-conviction application, trial counsel testified by affidavit that he "obtained and reviewed the predicate convictions and the supporting evidence prior to the multiple offender hearing and found nothing which would be subject to objection."  The trial court denied the claim based on that testimony (Tr. 397-98), and the higher courts summarily denied writ applications.

Petitioner continues to raise general arguments that counsel should have been able to defeat the State's multiple offender case, but he has not set forth a specific factual basis for how that could have been accomplished.  He does object that the exhibits were not properly certified, authenticated, or sealed.  Assuming such is required, the exhibits all came from the same court in which Petitioner was convicted of the most recent offense, so counsel likely had no reason to doubt their authenticity, and it would have simply delayed the inevitable had he objected that proper proof of authenticity be presented by the clerk of court.  Most

important, there is no indication that any of the records are not authentic. Petitioner's speculations with regard to this claim are simply insufficient to show that the state court's adjudication of it on the merits was not only incorrect but an objectively unreasonable application of <u>Strickland</u>.

### D.  Other Crimes Evidence

Petitioner argued in his post-conviction application that counsel was ineffective because he did not object to the admission of "other crimes" evidence used by the State.  Tr. 365-66.  Petitioner did not, however, so much as hint as to what other crimes evidence he referred to.  Defense counsel testified that he made objections to all of the evidence that he thought objectionable.  Tr. 391.  The trial court rejected the claim because Petitioner did not set forth one example of the purported other crimes introduced into evidence.  Tr. 398. Petitioner continues to raise the issue in this court but has yet to identify by name, record reference, or otherwise any other crimes evidence to which counsel should have objected. He has fallen far short of showing that this claim requires his conviction be vacated.

### E.  Excessive Sentence

The Louisiana multiple offender statute mandated a life sentence because of Petitioner's criminal history.  Defense counsel objected that anything more than 20 years would constitute cruel and unusual punishment in violation of both the United States and Louisiana Constitutions.  The judge noted that Petitioner actually had more than four prior

felonies, denied the constitutional attack, and found that the life sentence was "well justified" under the circumstances.  Tr. 255-61.

Petitioner raised the argument on direct appeal, with his brief invoking both the Louisiana and federal Constitution.  Tr. 275.  The appellate court noted that Petitioner did not articulate any reason why his circumstances justified an exception to the mandatory sentence.  Given Petitioner's eight total felonies, his life sentence did not shock the court's sense of justice.  State v. Thomas, 948 So.2d at 1156.

The Supreme Court has reviewed a number of lengthy sentences for multiple offenders.  The best case for Petitioner is Solem v. Helm, 103 S.Ct. 3001 (1983), which struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand larceny, and one prior conviction of third-offense DWI. The majority found the sentence was significantly disproportionate to the crime, and Solem prevailed.

"In other cases, however, it has been difficult for the challenger to establish a lack of proportionality." Graham v. Florida, 130 S.Ct. 2011 (2010). In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

A determination of whether a sentence is grossly disproportionate for a particular crime begins by comparing the gravity of the offense and the severity of the sentence. <u>Graham</u>, 130 S.Ct. at 2022. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. <u>Id</u>.; <u>McGruder v. Puckett</u>, 954 F.2d 313, 316 (5th Cir.1992). The court must be mindful that the sentence is imposed to reflect the seriousness of the most recent offense, not as it stands alone, but in the light of the prior offenses. <u>McGruder</u>, <u>supra</u>.

Petitioner's life sentence for burglary of an inhabited dwelling, one in which he threatened the homeowner and another person with violence, after committing a string of prior felonies that included two robberies, is not shocking. Petitioner's criminal history

shows that prior felony convictions and prison sentences were not adequate to deter him from continuing a life of crime.  There is no reason to believe that another lesser sentence would have finally taught Petitioner a lesson.  Imprisoning him for life was likely the only way to stop him from committing more burglaries, robberies, and other felonies.  The sentence was not grossly disproportionate to the crime in light of the prior convictions.  As in <u>Lockyer</u>, the state court's rejection of the argument was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, so habeas relief is not permitted.

**Errors Patent**

Petitioner included in his direct appeal brief a request that the state court search the record for any patent errors.  Tr. 279.  The appellate court did find one such error; the trial court had not informed Petitioner of the limitations period for filing a post-conviction application.  That oversight was remedied.  Petitioner continues to include the one-sentence errors patent request as a separate issue in his habeas petition.  There is no basis for affording federal habeas relief, which requires exhaustion and presentation of a federal constitutional claim, based on that generic request.  <u>See</u> <u>Thomas v. Rader</u>, 2011 WL 6963956, *8 (E.D. La. 2011).

Accordingly,

**IT IS RECOMMENDED** that the petition for habeas corpus be **denied** and **dismissed with prejudice**.

Page 12 of  14

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within 14 days from the

date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

 THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of March, 2013.


           _____
             MARK L. HORNSBY
          UNITED STATES MAGISTRATE JUDGE